Eastburn *v.* Turnoff, Appellant.

Argued November 10, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*John H. Clark, Jr.,* with him *Edward M. Seletz,* and *Seletz & Clark,* for appellant.

*John R. Graham,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 5, 1959:

Should service of civil process be set aside on evidence that the service was made as the result of a ruse practised on the defendant? That is the question involved in this case.

Some time during 1951, Sol S. Turnoff, a resident of Philadelphia, who had received several threatening letters, employed M. H. Eastburn, a private detective, to do some investigative and protective work for him. Later on a dispute arose between them as to the period of time these services were rendered. This was followed by a claim by Eastburn that he had not been fully compensated. Accordingly, on February 5, 1957, he entered a suit in assumpsit against Turnoff in Delaware County where Eastburn lived. On February 7, 1957, a deputy sheriff of Delaware County served the summons in assumpsit on Turnoff in Haverford, Delaware County. Turnoff filed preliminary objections, averring that he had been lured into Delaware County by false representations made by Eastburn through the District Attorney's office in Philadelphia. He prayed that the service be set aside. Eastburn denied the averments of fraud and deceit and asked that the preliminary objections be dismissed.

The Court of Common Pleas of Delaware County took testimony on the issue and dismissed the preliminary objections. The defendant appealed.

While there are conflicting statements in the record as to what caused Turnoff to go to Delaware County, there can be little doubt that he did not make the journey on his own initiative. Turnoff testified that I. I. Solovay, a police officer assigned to the District Attorney's office in Philadelphia, informed him that he had received a telephone call from Eastburn in Delaware County to the effect that Eastburn had some con-

fidential information which would be of considerable value to the District Attorney's office but which he could not turn over to Solovay without the consent of Turnoff, since it had been gathered while Eastburn was working for Turnoff. Further, Eastburn said, according to Solovay, Turnoff would need to come into Delaware County to give that consent. Turnoff told Solovay that if Eastburn would telephone him he would gladly authorize the release of any information in his possession which would be useful to the District Attorney of Philadelphia but that, under no circumstances, would he go to Delaware County to impart that authorization.

Solovay himself testified at length as to how, in the latter part of January, 1957, Eastburn had called the District Attorney's office where Solovay was employed, how Eastburn had offered him confidential information, but how he could only give it to him with the approval of Turnoff, which approval had to be personally made known to him in Delaware County. Solovay said that Eastburn made many further calls to him, all the time urging and insisting that Turnoff accompany him to Delaware County.

Eastburn testified that it was Solovay, and not he, who initiated the exchange of telephone calls. We are convinced from a reading of the record that in this conflict of testimony, verisimilitude can more easily attach to Solovay's account than Eastburn's. Solovay had no reason to importune Eastburn, but Eastburn had a very definite purpose in enlisting Solovay's assistance in his plan to have Turnoff visit him in Delaware County.

But it really does not matter who called whom first. It is indisputable that Eastburn held out to Solovay the inducement of some choice detective material, provided Solovay brought Turnoff with him to Delaware

County. It is also indisputable that, after many calls made by Solovay to Turnoff, the latter finally agreed to accompany him to Delaware County because he believed that, by doing so, he would be pleasing the office of the District Attorney of Philadelphia County.

Thus, on the night of February 7, 1957, Solovay and Turnoff motored to Haverford, and, by pre-arrangement, met Eastburn in one of the buildings of the Haverford College where Eastburn proffered his "confidential" treasure. The treasure turned out to be stale information which conveyed nothing new nor useful to Solovay. After the meeting, which was a short one, lasting approximately only twenty minutes, Turnoff approached his automobile for the return trip to Philadelphia. As he was about to enter his car, a deputy sheriff of Delaware County handed him the summons which is the subject of this litigation. Turnoff testified that as the paper was served on him Eastburn "sort of chuckled—I don't remember his exact words but it was in the tone of being a very fine trick on me."

Do the circumstances surrounding the service of this process taint the entire proceeding? It is clear that Eastburn got Turnoff into Delaware County through trickery and cunning. He was induced to make the trip on the assumption that he was performing some service for the District Attorney in Philadelphia. It developed, in point of fact, that he had been decoyed into a trap. The law does not favor entrapment. It provides an honorable procedure for creditors to summon their debtors to a legal accounting. The man who grovels in the slough of treachery in order to ensnare his adversary into court may eventually find his cause slipping through the guile of his mired hands. "Personal service of process, if procured by fraud, trickery, or artifice is not sufficient to give a

court jurisdiction over the person thus served, and service will be set aside upon proper application." (42 Am. Jur., §35.)

"Thus," American Jurisprudence says further, "if a person resident outside the jurisdiction of the court and the reach of its process is inveigled, enticed, or induced, by any false representation, deceitful contrivance, or wrongful device for which the plaintiff is responsible, to come within the jurisdiction of the court for the purpose of obtaining service of process on him in an action brought against him in such court, process served upon him through such improper means is invalid, and upon proof of such fact the court will, on motion, set it aside." (Ibid.)

But this does not mean that the law will cloak civil defendants in a mantle of immunity which insulates them from all process in counties outside their own. The plaintiff seeking honest payment of a debt has the right to exercise intellectual strategy in order to get service on a debtor who is avoiding him. He may employ his wits against those of his adversary just as a chess player contemplates moves which will bring him victory. But in this employment he must stay within bounds recognized by law. He may not practice a deception on the law itself. He may not use the criminal processes of the realm to fly a false flag of truce. To adopt the facilities of the District Attorney's office as an ambush in order to entrap another for the purpose of collecting a money debt is like a pirate ship spuriously flying a signal of distress in order to attract a benevolently-minded vessel for the purpose of robbing and sinking it.

There is not a shadow of doubt that Eastburn used the District Attorney's office of Philadelphia as a camouflage behind which he manuevered his scheme to serve process on Turnoff in a county not his own. On

this point the lower court said: "We have very carefully considered all of the circumstances surrounding the service of the writ before us. It is not to be lightly passed over that Eastburn worked for Dr. Turnoff* in a confidential and close relationship for some time. He may be presumed to know the manner in which Dr. Turnoff would conduct himself when confronted with a plea from the law enforcement officers in his community to lend his cooperation to obtain information. It would be difficult for any responsible person placed in Dr. Turnoff's position to steadfastly refuse voluntary assistance to the District Attorney's office."

Although conceding that Turnoff's visit into Delaware County was inspired only because of the intervention of the District Attorney's office, the lower Court still felt that the stratagem employed by Eastburn did not "constitute a fraud upon the defendant and this court." In attempted support of its logic the Court cited the case of *National Paper Corporation v. Scheck et al.,* 47 Lackawanna Jurist 189. In that case the defendant, who lived in New York, was invited by the plaintiff corporation to come to Scranton to attend a meeting of the corporation's board of directors, of which he was a member. Since the main office of the corporation was located in New York the defendant asked that the meeting be held there, where the board often met. His request was refused. He came on to Scranton and was there served with a summons in his hotel. He moved to strike off the sheriff's return. The motion was denied. The Court said: "There is no doubt in our minds that the reason for holding the meeting of the Board of Directors here locally was to obtain personal service in this action on the defendant and thus gain jurisdiction in this county. No other

---

* The lower court refers to the defendant as Dr. Turnoff throughout its opinion.

conclusion is reasonable. However, the locating of the meeting here locally was legal. It was undoubtedly a dirty trick and with a motive far from wholesome. But we cannot see where it amounts to fraud, or misrepresentation or artifice."

It would almost seem a stultification of the principles of justice to characterize an act a "dirty trick" and yet not rule it out as legally ineffective. The Lackawanna County court saw in the plaintiff's act a departure from the moral code without finding it to be a fraud cognizant by law, since the meeting to which the defendant was enticed, was that of a private corporation possessing inherent powers to conduct its business as it saw fit. The Court's logic and ruling may have been entirely correct and we pass no judgment on it.

But even if we were to agree with its conclusion, the case would offer no prop of support to the rationalization offered by the plaintiff in the case at bar. Here we are not considering the action of a private corporation. We have here the unwarranted use of the criminal processes of the Commonwealth to thrust a person not charged with crime into the gears of the machinery of the law in another county. It is true that Turnoff was not subpoenaed. He could have refused, if he wished, to go to Delaware County, but one does not lightly refuse to cooperate with a District Attorney's office. As already quoted, the court of Delaware County said very aptly: "It would be difficult for any responsible person placed in Dr. Turnoff's position to steadfastly refuse voluntary assistance to the District Attorney's office."

It is significant also to note here that Dr. Turnoff was a member of the Pennsylvania Board of Pharmacy, and as such, held an official position in the Commonwealth. This would supply an additional reason why

he could not well refuse the bidding of another agency of government.

Counsel have not directed our attention to, nor have we been able through independent research to find, any case precisely similar to the one before us. However, the case of *Crusco v. Strunk Steel Co.*, 365 Pa. 326, 329, decided in 1950, illuminates the jurisprudential landscape in a manner which should make it a simple matter to find the path leading to a proper disposition of the question before us. In that case the plaintiff Crusco, who lived in Philadelphia, filed in a magistrate's office in Philadelphia an information against William M. Strunk, who lived in Montgomery County, charging him with fraudulent conversion and obtaining money by false pretenses. He also began a civil suit in the Court of Common Pleas against the defendant on the same facts. Strunk was arrested in Montgomery County. He came to Philadelphia to enter bail and to waive hearing. As he was leaving the magistrate's office, he was served with a complaint in assumpsit. We declared the service to be illegal.

Chief Justice DREW, speaking for the Court, said: "It is well settled that criminal process may not be used as a means of bringing a party into a jurisdiction in order that service of civil process may be had on him there. In such an instance, the latter service will be set aside as a fraud on the court. In the present controversy, there is the coincidence of parties and subject matter in both the criminal and civil actions, and the short period of twelve days which elapsed from the filing of the civil suit and the arrest of defendant, Strunk, under the criminal warrant. The cumulative effect of these facts is to raise a presumption that plaintiff did not act in good faith in bringing his criminal action, but fraudulently pursued this remedy primarily to enable the courts of Philadelphia County to obtain

324

jurisdiction over Strunk in the civil suit. This abuse of process cannot be condoned, and therefore it was proper to set the service aside."

While, of course, in the case at bar Turnoff had not been arrested, he was under the aegis of the District Attorney's office and was, therefore, entitled to protection from civil process while engaged in performing a duty to cooperate with law enforcement agencies of the State and of the community in which he lived.

The order of the court below is reversed, and the service on the defendant is set aside as a nullity and of no legal effect.